# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| THE LANCE AND LINDA NEIBAUER JOINT TRUST, an Oregon Trust, by and Through LANCE NEIBAUER, as trustee, Plaintiff,<br><br>v.<br><br>MICHAEL J. KURGAN, an individual, Defendant, | ) Case No.: 6:14-cv-01192-MC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Defendant, specially appearing pro se, objecting to the courts assertion of in personam jurisdiction over this answering Defendant, for its reply to the Complaint of THE LANCE AND LINDA NEIBAUER JOINT TRUST, an Oregon Trust, by and Through LANCE NEIBAUER, as trustee, (hereinafter "NEIBAUERS") states as follows: All Answers correspond to the numbered paragraphs of the Complaint. All allegations of the Circuit Court of the State of Oregon for the County of Deschutes Complaint are denied unless expressly admitted herein.

## ANSWERS

1.      In response to paragraph #1, the Defendant lacks sufficient information or belief to know the identity of the trust, but admits the same. As to the second sentence, the Defendant denies that the Plaintiff is the owner of an aircraft N461BB, a 2001 Piper Meridian ("aircraft"), and the Defendant further denies that it is located in Oregon.

2.      In response to paragraph #2, Defendant Michael J. Kurgan Admits.

3.      In response to paragraph #3 Defendant Michael J. Kurgan generally denies that he engaged in substantial and not isolated activities in the State of Oregon, and specifically denies

that he entered into a lease in the State of Oregon; admits that he took delivery of the aircraft and returned it in Oregon; and denies any other implications of the paragraph and demands specific proof thereof;

4.      In response to Paragraph #4, the Defendant Denies each and every allegation, and every part thereof and demands specific proof thereof.

5.      In response to paragraph #5, Defendant admits that he signed a lease, specifically and generally denies the remaining allegations, and demands specific proof thereof.

6.      In response to paragraph #6, Defendant admits the parties entered into an addendum to the Lease. The Defendant specifically and generally denies the remaining allegations and demands specific demands proof thereof;

7.      In response to paragraph #7, Defendant admits, but denies any other inferences thereof and the lease and any addendum thereof speaks for itself.

8.      In response to paragraph #8, Defendant admits, but denies any other inferences thereof and the lease and any addendum thereof speaks for itself.

9.      In response to paragraph #9, Defendant generally and specifically denies each and all allegations contained therein, and demands specific proof thereof.

10.     In response to paragraph #10, Defendant generally and specifically denies each and all allegations contained therein, and demands specific proof thereof.

11.     In response to paragraph #11, Defendant generally and specifically denies each and all allegations contained therein, and demands specific proof thereof.

12.     In response to paragraph #12, Defendant generally and specifically denies each and all allegations contained therein, and demands specific proof thereof.

13.     In response to paragraph #13, Defendant generally and specifically denies each and all allegations contained therein, and demands specific proof thereof.

14.     In response to paragraph #14, Defendant generally and specifically denies each and all allegations contained therein, and demands specific proof thereof.

15.     In response to paragraph #15, Defendant generally and specifically denies each and all allegations contained therein, and demands specific proof thereof.

16.     In response to paragraph #16, Defendant generally and specifically admits that he asserted his option to purchase the aircraft, and denies each and all remaining allegations contained therein, and demands specific proof thereof.

17.     In response to paragraph #17, Defendant generally and specifically denies each and all allegations contained therein, and demands specific proof thereof.

18.     In response to paragraph #18, Defendant incorporates and realleges all of the answers to the preceding paragraphs herein as though set forth in full.

19.     In response to paragraph #19, Defendant generally and specifically denies each and all allegations contained therein, and demands specific proof thereof.

20.     In response to paragraph #20, Defendant generally and specifically denies each and all allegations contained therein, and demands specific proof thereof.

21.     In response to paragraph #21, Defendant generally and specifically denies each and all allegations contained therein, and demands specific proof thereof.

22.     In response to paragraph #22, Defendant generally and specifically denies each and all allegations contained therein, and demands specific proof thereof.

23.     In response to paragraph #23, Defendant incorporates and realleges all of the answers to the preceding paragraphs herein as though set forth in full.

24. In response to paragraph #24, Defendant generally and specifically denies each and all allegations contained therein, and demands specific proof thereof.

25. In response to paragraph #25, including all subparts thereto, Defendant generally and specifically denies each and all allegations contained therein, and demands specific proof thereof.

26. In response to paragraph #26, including all subparts thereto, Defendant generally and specifically denies each and all allegations contained therein, and demands specific proof thereof.

27. In response to paragraph #27, including all subparts thereto, Defendant generally and specifically denies each and all allegations contained therein, and demands specific proof thereof.

28. In response to paragraph #28, Defendant incorporates and realleges all of the answers to the preceding paragraphs herein as though set forth in full.

29. In response to paragraph #29, to the extent that there exists a justiciable dispute and an actual controversy between the parties, the Defendant admits; but as to the remainder of the compound and complex statement, the Plaintiff generally denies and demands strict proof thereof.

30. In response to paragraph #30, Defendant Admits.

31. In response to paragraph #31, including all subparts thereto and all prayers for relief, Defendant generally and specifically denies each and all allegations contained therein, and demands specific proof thereof.

### DEMAND FOR JURY TRIAL

Defendant accepts the demand for jury trial.

## DEFENSES

32.    There are insufficient minimum contacts with the Defendant and the State such that the exercise of personal jurisdiction over the Defendant is unjust and violates the due process and equal protection rights of the Defendant.

33.    Plaintiff failed to state a claim upon which relief can be granted. Plaintiff's Complaint and each cause of action therein fail to state facts sufficient to constitute a cause of action against the Defendant for which relief can be granted.

34.    Plaintiff has not suffered any monetary harm as the aircraft which the Plaintiff claims it owns, was actually sold to a third party for more than the option price accepted by the Defendant and thus is not entitled to any of the relief sought.

35.    The Plaintiff failed to mitigate its damages in its obtaining the $13,612.28 work on the aircraft when the Defendant had requested the Plaintiff have the aircraft repairs done in California at the shop selected by the Defendant.

36.    Defendant is entitled to a claim of offset on the grounds that the aircraft sold for more than the option price exercised by the Defendant; that the aircraft was delivered in a non-airworthy condition and the Defendant is entitled to an offset based on the amounts he incurred and loss of use of the aircraft, storage and other expenses while the aircraft was made serviceable; and an offset of sums expended on the aircraft after the Plaintiffs prior breach of the agreement; and other offset proven at the time of trial.

37.    Defendant is entitled to and asserts an absolute privilege for the conduct alleged in the complaint by the Plaintiff.

38.    Plaintiffs' claims are barred by the doctrine and statutory ANTI-SLAPP provisions of the Oregon Statute § 31.150, et seq.

39.     The Plaintiff, by doctrine of waiver and equitable estoppel, are barred from asserting a deadline for notification of the exercise of the option to purchase.  Once the lease was extended, the Plaintiff was obligated to notify the Defendant of his intention to revoke or terminate the option to purchase.

40.     By reason of the allegations in the Counterclaim, the facts set forth in the affirmative defenses, and the agreement between the parties and the conduct thereon, Plaintiffs' claims are barred by the legal and equitable doctrines of Waiver.

41.     By reason of the allegations in the Counterclaim, the facts set forth in the affirmative defenses, and the agreement between the parties and the conduct thereon, Plaintiffs' claims are barred by the legal and equitable doctrine of estoppel.

42.     Plaintiffs' claims are barred by the doctrine of fraud in the inducement as to the condition of the aircraft. The elements of actionable fraud allowing a party to avoid a contract are as follows:

        (1)     A representation; Plaintiffs represented the aircraft was airworthy when leased / sold; represented that it could be upgraded by the Defendant for upgraded avionics; represented that the actual cost of the hot section was below the $30,000 cancellation price; that the government taxes and brokerage commissions would be paid by the Plaintiff, and even the allegation in the complaint that the Defendant interfered with the sale and Plaintiff represented to the Court that the third party buyer incurred $20,000 in attorneys' fees for an indemnity agreement caused by the interference; other conditions which where material to the condition of the aircraft.

        (2)     Its falsity: That the true facts were the aircraft was received by the Defendant in an un-airworthy condition and it could not be upgraded by the Defendant for upgraded avionics

without first upgrading other parts of the aircraft where the cost made the upgrade commercially impracticable; that the Plaintiff concealed from the Defendant by providing a falsified invoice the actual cost of the hot section stating that it was below the $30,000 cancellation price, when, in fact, it cost more than $30,000; that the government taxes and brokerage commissions were not paid by the Plaintiff; that the third party buyer was not interfered with by Defendant, and further, did not incur the $20,000 but asked for a discount due to the fact the purchase inspection revealed in excess of $50000 in squawks unrelated to the Defendant; and other conditions which where material to the condition of the aircraft.

(3)     Its materiality; That the contract terms listed above, including, but not limited to, the airworthiness, the avionics, the hot section price, and brokerage commission and taxes as well as the other material terms which were breached, are all material terms of the contract.

(4)     The speaker's knowledge of its falsity or ignorance of its truth: At the time the statements were made, the speaker knew they were false, or were ignorance of the true facts as stated or promises made with reckless disregard of whether they will be performed may constitute fraud. *Hocks v. Hocks*, supra, 95 Or App at 44.

(5)     The speaker's intent that it should be acted upon; that the Plaintiffs' intent in making the statements were made were to induce the Defendant into entering the agreement.

(6)     The injured party's ignorance of its falsity; The Defendant was unaware of the falsity of the statements made by the Plaintiffs.

(7)     The injured party's reliance on the truth of the representation; that the Defendant detrimentally and justifiably relied on the representations by the Plaintiff, including, but not limited to, incurring considerable sums in making the aircraft airworthy when it arrived to California; incurred costs of repairs including paying a $22,500 for the hot section, entered into a

very costly lease; lost an excess of $100,000 in the difference between the option price and the fair market value; inspection fees, court costs, and other damages incurred and proven at trial; AND

(8)    The injured party's right to rely on its truth: The Defendant was justified and had the right to rely on the statements of the Plaintiff as the Plaintiff is the owner of an aircraft and was under strict regulations and guidelines regarding the regular inspection, maintenance and upkeep of the aircraft. When the Plaintiff made statements to the Defendant about the condition of the aircraft, the Defendant was entitled to rely on those representations. Furthermore, when the Plaintiff gave the falsified invoice to the Defendant, the Plaintiff had the real invoice which reflected the higher amount. The Defendant was justified and entitled to rely on the invoice and paid the same based on the face of the invoice. The Plaintiff knew that the invoice was falsified and paid the difference to the mechanic so the balance paid was below the $30,000 cut off amount. *Gardner v. Meiling*, 280 Or 665, 671, 572 P2d 1012 (1977).

43.    By reason of the allegations in the Counterclaim, the facts set forth in the affirmative defenses, and the agreement between the parties and the conduct thereon, Plaintiffs' claims are barred by the doctrine of fraud in the inducement as Defendant was deprived of his opportunity to cancel the agreement as it relates to the Plaintiff misrepresenting the cost of the hot section. The parties agreed that if the cost of the hot section exceeded $30,000, that Defendant would have the right to cancel the contract. The cost of the hot section exceeded that amount, and the Plaintiff concealed the true cost of the hot section and did so, concealing that fact from the Defendant for the purpose of inducing him to continue with the contract and not cancel the same. That had the Plaintiff known the true facts as to the true cost of the hot section, he would have

cancelled the contract pursuant to the agreement. That the defendant in relying to his detriment as to the true cost of the hot section was deprived of his right to cancel the agreement;

44.     The lease contained an option for Defendant to purchase the aircraft at any time during the lease term for eight hundred thousand dollars ($800,000.00), less five thousand dollars for each lease month already paid at the time when Defendant exercised said option to purchase. At the time of the termination of the lease, a total of six (6) months had elapsed since the inception of the lease, and thus, the purchase price to Defendant was to have been calculated as seven hundred and seventy thousand dollars ($770,000.00). Plaintiffs have entered into an agreement with a third party to purchase the aircraft for an amount in excess of eight hundred and twenty-five thousand dollars ($825,000.00). The purchase with the third party buyer was signed under a confidentiality agreement at the behest of the Plaintiff, with the intent to conceal from the court the terms of the sale. Because Plaintiffs have refused to honor Defendant's right to exercise his option to purchase the aircraft, in violation of the lease agreement, Plaintiffs placed Defendant in a position which would require him to competitively bid against Plaintiffs' third-party buyer in order to secure for himself the purchase of the aircraft, and thus, were PLAINTIFF to attempt to purchase the aircraft, he would be obliged to incur additional expenses in the amount of at least fifty-five thousand dollars ($55,000.00). Defendant learned that Plaintiffs listed the aircraft for sale at the amount of eight hundred and ninety thousand dollars ($890,000.00) while the lease option was pending, in direct breach of the provision of the agreement prohibiting the same, and thus the true asset-value of the aircraft was one hundred and twenty thousand dollars more than the amount for which Defendant would have been able to purchase the aircraft pursuant to the express terms of the lease, had Plaintiffs not failed, in violation of the terms of the lease, to honor Defendant's right to exercise his right to purchase the aircraft. Additionally, Defendant is

informed, and believes, and thereon alleges that Plaintiffs knowingly and intentionally authorized and incurred mechanical overtime expenses, in order to place the aircraft into legally airworthy condition for sale to Plaintiffs' third-party buyer before Defendant could exercise his right to the option to purchase the aircraft. Additionally, Defendant learned that Plaintiffs agreed to sell the aircraft to their third-party buyer at a greatly reduced cost, in a knowing, and deliberate effort to deprive Defendant of his business advantage, regarding the potential purchase of the aircraft pursuant to the terms of the lease. Thus, Defendant alleges that, in refusing to honor Defendant's right to exercise his option to purchase the aircraft, in violation of the lease agreement,

Plaintiffs have intentionally interfered with Defendant's business advantage, as originally negotiated pursuant to the terms of the lease.

45. Defendant invokes the Doctrine of Unclean Hands as the Defendant alleges that the Plaintiff or the person or entity that assigned the alleged claim to Plaintiff acted in a dishonest or fraudulent manner with respect to the dispute at issue in this case.

46. Defendant alleges that Plaintiffs Complaint, and each cause of action therein is barred by the Doctrine of Estoppel, specifically Estoppel in Pais.

47. Defendant alleges that Plaintiffs actions are precluded, whereas Plaintiff's demands for interest are usurious and violate state and federal laws.

48. Defendant alleges that Plaintiffs are not entitled to reimbursement of attorneys' fees because the alleged contract did not include such a provision, and there is no law that otherwise allows them. Plaintiff's creative use of the indemnity agreement to assert the justification to claim attorney's fees as damages under the Indemnity Agreement is unwarranted. The agreement which was written by the Plaintiff of does not contemplate the awarding of attorney's fees in the

event Defendant had to enforce its rights under the contract. The Indemnity Agreement expressly states "Indemnitor undertakes to indemnify Indemnitee from any and all liability, loss, suits, claims, actions or loss arising out of the **use or possession of the aircraft** N461BB". Defendant had neither the use or possession of the aircraft at the time the alleged attorney's fees were accrued. If Plaintiff Complaint is correct the Indemnity Agreement was not in effect at the time and states the duration "This Agreement shall remain in force commencing on the above date and for the duration of the Lease of N461BB" Plaintiff Complaint states "until March 20, 2014, when the lease, and its addendum, expired."

49.    Plaintiff failed to comply with normal and accepted business practices, including payment of brokerage fees and taxes; committed the other acts alleged herein; and as a result, breached the implied covenant of good faith and fair dealing which is implied in every agreement; and as a result of the prior breach of contract of the Plaintiff, the Defendants obligations under the agreement were excused and Defendant is entitled to rescission and restitution of all monies paid under the agreement.

50.    Plaintiff's alleged damages are the results of acts or omissions committed by the Plaintiff.

51.    Defendant alleges that the granting of the Plaintiff's demand in the Complaint would result in Unjust Enrichment as the Plaintiff would receive more money than plaintiff is entitled to receive.

52.    Plaintiff's alleged damages are limited to real or actual damages only and the Plaintiffs have fabricated, enhanced, overblown, and padded their damages where Plaintiffs had a duty to mitigate their damages and failed to do so.

53.     Defendant invokes the Doctrines of *Scienti et volenti non fit injuria* (a person who knowledgeably consents to legal wrong has no legal right) and *Damnum absque injuria* (harm without injury).

54.     Accord and Satisfaction as Defendant alleges that the original creditor accepted payment from the third party buyer for the alleged debt, or a portion of the alleged debt, or that the original creditor received other compensation in the form of monies and/or credits.

55.     Defendant reserves the right to amend and/or add additional Answers, Defenses and/or Counterclaims at a later date.

56.     Defendant incorporates the counterclaims herein, as though set forth in full, and by reason thereof, the Defendant is entitled to a complete offset and recovery thereunder as prayed therein.

57.     The Defendant asserts the prior breach of the Plaintiffs contract and as a result, the Plaintiffs complaint is barred by reason thereof.

58.     The Plaintiff has failed to comply with conditions precedent, beginning with delivering an airworthy aircraft; to payment of taxes; to payment of brokerage fees; to all the other conduct alleged herein; and as a result, the Plaintiffs entitlement to any affirmative relief is barred by reason thereof.

59.     Plaintiff is not permitted to profit from his own inequity. The agreement is abhorrent under the law where the Plaintiff intentionally deprived the Defendant of his right to cancel as a result of the conduct alleged herein, including the matter relating to the hot section overhaul. Wherefore the Defendant requests that the Plaintiffs take nothing by their complaint and further grant the Defendant his affirmative relief as prayed in the Counterclaims.

## COUNTERCLAIMS

Comes now COUNTERCLAIMANT, MICHAEL J. KURGAN (hereinafter, "COUNTERCLAIMANT"), who hereby complains against COUNTERCLAIM DEFENDANTS, THE LANCE AND LINDA NEIBAUER JOINT TRUST, an Oregon Trust, by and Through LANCE NEIBAUER, as trustee, (hereinafter "NEIBAUERS") (hereinafter, individually "COUNTERCLAIM DEFENDANT," and collectively, "COUNTERCLAIM DEFENDANTS"), as follows:

## PARTIES

61. At all times mentioned herein, COUNTERCLAIMANT, MR. MICHAEL KURGAN, is and was a resident of Miami-Dade County, Florida, and is and was doing business as the lessee of an aircraft, the contract for which dictated that the aircraft was to be kept in a hangar in San Diego County, California.

62. At all times mentioned herein, COUNTERCLAIM DEFENDANT, MR. LANCE NEIBAUER, is and was a resident of the State of Oregon, is and was a Trustee of COUNTERCLAIM DEFENDANT, THE LANCE AND LINDA NEIBAUER JOINT TRUST, and is and was doing business as the lessor of the aforementioned aircraft, the contract for which dictated that the aircraft was to be kept in a hangar in San Diego County, California.

63. At all times mentioned herein, COUNTERCLAIM DEFENDANT, MS. LINDA NEIBAUER, is and was a resident of the State of Oregon, and is and was a Trustee of COUNTERCLAIM DEFENDANT, THE LANCE AND LINDA NEIBAUER JOINT TRUST.

64. COUNTERCLAIMANT is informed, and believes, and herein alleges that, at all times mentioned herein, COUNTERCLAIM DEFENDANT, THE LANCE AND LINDA NEIBAUER JOINT TRUST, is and was an entity organized pursuant to the laws of the State of Oregon, of which COUNTERCLAIM DEFENDANTS LANCE NEIBAUER is the Trustees.

## JURISDICTION AND VENUE

65.     Jurisdiction is proper in this Court, as the amount in controversy exceeds $75,000.00, and

the COUNTERCLAIMANT is a citizen of Florida and the named COUNTERCLAIM

DEFENDANTs are citizens of Oregon, and thus the subject matter is within this Court's

jurisdiction, pursuant to 28 U.S.C. § 1332.

66.     This Court has personal jurisdiction over the COUNTERCLAIM DEFENDANTs, by

virtue of their residence and doing business within this State and their submission to this

Jurisdiction.

67.     Venue is proper in this Court, as a counterclaim to a pending action.

## INTRODUCTION

68.     COUNTERCLAIMANT hereby incorporates by reference all previous paragraphs of this

Counterclaim as though they were fully set forth herein.

69.     This lawsuit arises out of the termination of a lease (hereinafter, "the lease") on a private

aircraft (hereinafter, "the aircraft"), where the terms of the lease provided

COUNTERCLAIMANT with an option to purchase the aircraft at the termination of the lease,

and where COUNTERCLAIM DEFENDANTS failed to honor such lease terms, and instead

entered into an agreement for the sale of the aircraft to a third party, and sold the aircraft to the

third party buyer, in violation of the express terms of the lease.

70.     The lease was entered into between COUNTERCLAIMANT and COUNTERCLAIM

DEFENDANTS (hereinafter, collectively, "the parties") on or about September 20, 2013, and

was originally scheduled to terminate on or about March 20, 2014.

71.     In December of 2013, the parties signed an addendum to the lease (hereinafter, "the addendum"), which was intended to extend the term of the original lease, while leaving the original lease terms otherwise intact, and which contained several additional conditions.

72.     The addendum contained a condition which could not be performed by COUNTERCLAIMANT, because the performance of that condition depended upon the performance of a preliminary technical requirement by COUNTERCLAIM DEFENDANT LANCE NEIBAUER, which said COUNTERCLAIM DEFENDANT declined to undertake, and thus the addendum was rendered null and void, and the termination date of the original lease was automatically reinstated.

73.     The original lease terminated by its terms, on the scheduled date of March 20, 2014, not counting days that the Aircraft was non-airworthy whereupon COUNTERCLAIMANT physically returned the aircraft to COUNTERCLAIM DEFENDANTS.

74.     The original lease contained an option for COUNTERCLAIMANT to purchase the aircraft at the termination of the original lease term, subject to a thirty-day advance notification-of-intent requirement, however, because the addendum (whereby the original lease was intended to be extended) was still in force within thirty days of the termination date of the original lease, COUNTERCLAIMANT did not provide notice of intent to purchase, believing, at the time, that the actual termination date would occur one year hence from the original termination date.

75.     When the addendum became null and void, the original termination date of the lease was automatically reinstated, however, COUNTERCLAIM DEFENDANTS did not honor COUNTERCLAIMANT's right to exercise his option to purchase the aircraft, but instead argued that COUNTERCLAIMANT had waived that right due to his failure to notify

COUNTERCLAIM DEFENDANT, regarding his intent to purchase, more than thirty days ahead of the termination date of the original lease.

76. Thereafter, COUNTERCLAIM DEFENDANTS proceeded to advertise, negotiate and sell the aircraft to a third party, in violation of COUNTERCLAIMANT's right to exercise his option to purchase the aircraft, thus placing COUNTERCLAIMANT at an economic disadvantage, due to the difference between the amount which COUNTERCLAIMANT would have paid for the aircraft, pursuant to the express terms of the original lease, and the amount which COUNTERCLAIMANT is informed, and believes, and thereon alleges that COUNTERCLAIM DEFENDANTS received from the aforementioned third-party buyer.

## GENERAL ALLEGATIONS AND OPERATIVE FACTS
## COMMON TO ALL CLAIMS

77. COUNTERCLAIMANT hereby incorporates by reference all previous paragraphs of this Counterclaim as though they were fully set forth herein.

78. On or about September 20, 2013, the parties entered into a lease, for a specified term of six months, entitling COUNTERCLAIMANT to the exclusive use of a private aircraft (identification number: N461BB; serial number: 4697016).

79. The lease was drafted by COUNTERCLAIM DEFENDANTS.

80. The initial date for the termination of the original lease was set for six months from the date upon which COUNTERCLAIMANT took possession of the aircraft.

81. In December of 2013, the parties signed an addendum to the original lease, the express purpose of which was to extend the term of the original lease for an additional year, through March 20, 2015, and which contained additional conditions.

82. The addendum was drafted by COUNTERCLAIM DEFENDANTS.

83.     The original lease contained a clause entitling COUNTERCLAIMANT to the right to exercise an option to purchase the aircraft at any time, through the time of the termination of the lease, under the condition that "[m]ore than thirty days prior to the end of the Lease Term, the Lessee must notify the Owner of his intentions."

84.     The addendum to the original lease specified that COUNTERCLAIMANT was to install a particular item of technical equipment in the subject aircraft, however, when that proved impossible unless a preliminary technical requirement was also satisfied, and when COUNTERCLAIM DEFENDANTS declined to satisfy said preliminary technical requirement, the addendum became null and void, on or about March 19, 2014 (one day prior to the scheduled termination date of the original lease assuming the aircraft were delivered in an airworthy condition and it had not, by its terms, been extended during the time it took to make the aircraft airworthy), thus automatically reinstating the original termination date of the lease, but doing so within less than thirty days of the date of termination.

85.     The original lease terminated as originally scheduled, on March 20, 2014, and COUNTERCLAIMANT duly returned the subject aircraft to COUNTERCLAIM DEFENDANTS.

86.     Immediately thereafter, COUNTERCLAIM DEFENDANTS proceeded toward closure of a deal with a third party for the purchase of the aircraft, where COUNTERCLAIMANT is informed, and believes, and thereon alleged that said deal had been in the process of being negotiated prior to the actual termination of the original lease, in violation of an express provision of the original lease.

87.     When COUNTERCLAIMANT attempted to exercise his option to purchase the aircraft,

COUNTERCLAIM DEFENDANTS declined to honor that option, arguing that
COUNTERCLAIMANT had waived his right to exercise said option by failing to notify
COUNTERCLAIM DEFENDANTS of his intent to do so more than thirty days prior to the
termination of the lease.

### CLAIMS FOR RELIEF
### FIRST CAUSE OF ACTION:
### BREACH OF CONTRACT

88.    COUNTERCLAIMANT hereby incorporates by reference all previous paragraphs of this
counterclaim as though they were fully set forth herein.

89.    The original lease contained a clause entitling COUNTERCLAIMANT to the right to
exercise an option to purchase the aircraft at the time of the termination of the lease, under the
condition that "[m]ore than thirty days prior to the end of the Lease Term, the Lessee must notify
the Owner of his intentions."

90.    The original lease contained a clause which restricted COUNTERCLAIM
DEFENDANTS from engaging any third party to purchase the aircraft.

91.    COUNTERCLAIMANT alleges that COUNTERCLAIM DEFENDANTS breached the
terms of the original lease, by engaging a third party for the purchase of the aircraft, prior to the
termination of the lease.

92.    COUNTERCLAIMANT alleges that COUNTERCLAIM DEFENDANTS additionally
breached the terms of the original lease by denying COUNTERCLAIMANT his right to exercise
his option to purchase the aircraft at the termination of the lease.

93.    COUNTERCLAIMANT was originally given the option to purchase the aircraft at the
end of the lease term, provided that "[m]ore than thirty days prior to the end of the Lease Term,
the Lessee must notify the Owner of his intentions."

94.    The addendum to the original lease was intended to extend the term of the original lease by one year (i.e., through March 20, 2015), and was still in full force and effect at the time when thirty days remained until the original termination date of the lease.

95.    Thus, COUNTERCLAIMANT could not have known that the original termination date of the lease was ultimately going to be in effect, and thus COUNTERCLAIMANT could not have known that he had only a limited time remaining, prior to the original termination date of the lease, in which to announce his intentions regarding the exercise of his option to purchase the aircraft. Furthermore, it is anticipated as part of any purchase of an aircraft, that there be a pre-purchase inspection of the aircraft, and sufficient time must be provided to accomplish the same.

96.    When the addendum proved to contain conditions which were impossible to perform (the Counterclaimant wanted to upgrade the autopilot, however, to do so, required substantial modifications to the aircraft that would have been the obligation of the Counterclaim Defendants, and Counterclaimant agreed with the Counterclaim Defendant that the expense of the pre-requisite modifications did not make economic sense), and thus the addendum became null and void, and thus the original lease term thus not thereby extended, however, COUNTERCLAIM DEFENDANTS nonetheless held COUNTERCLAIMANT to the original more-than-thirty-days' notice requirement pertaining to the announcement of COUNTERCLAIMANT's intent regarding the exercise of his option to purchase the aircraft. COUNTERCLAIMANTS therefore allege breach of contract on the part of COUNTERCLAIM DEFENDANTS, and pray for monetary relief, the amount of which is to be determined, according to proof, at the time of trial.

## SECOND CAUSE OF ACTION:
## TORTIOUS INTERFERENCE
## WITH BUSINESS ADVANTAGE

97.    COUNTERCLAIMANTS hereby incorporate by reference all previous paragraphs of this Counterclaim as though they were fully set forth herein.

98.    The lease contained an option for COUNTERCLAIMANT to purchase the aircraft at any time during the lease term for eight hundred thousand dollars ($800,000.00), less five thousand dollars for each lease month already paid at the time when COUNTERCLAIMANT exercised said option to purchase.

99.    At the time of the termination of the lease, a total of six (6) months had elapsed since the inception of the lease, and thus, the purchase price to COUNTERCLAIMANT was to have been calculated as seven hundred and seventy thousand dollars ($770,000.00).

100.    COUNTERCLAIMANT is informed, and believes, and thereon alleges that COUNTERCLAIM DEFENDANTS have entered into an agreement with a third party to purchase the aircraft for an amount in excess of eight hundred and twenty-five thousand dollars ($825,000.00).

101.    Because COUNTERCLAIM DEFENDANTS have refused to honor COUNTERCLAIMANT's right to exercise his option to purchase the aircraft, in violation of the lease agreement, COUNTERCLAIM DEFENDANTS have placed COUNTERCLAIMANT in a position which would require him to competitively bid against COUNTERCLAIM DEFENDANTS' third-party buyer in order to secure for himself the purchase of the aircraft, and thus, were COUNTERCLAIMANT to attempt to purchase the aircraft, he would be obliged to incur additional expenses in the amount of at least fifty-five thousand dollars ($55,000.00).

102.    Additionally, COUNTERCLAIMANT is informed, and believes, and thereon alleges that COUNTERCLAIM DEFENDANTS listed the aircraft for sale at the amount of eight hundred and ninety thousand dollars ($890,000.00) during the term of the Agreement in direct breach,

and thus the true asset-value of the aircraft was one hundred and twenty thousand dollars more than the amount for which COUNTERCLAIMANT would have been able to purchase the aircraft pursuant to the express terms of the lease, had COUNTERCLAIM DEFENDANTS not failed, in violation of the terms of the lease, to honor COUNTERCLAIMANT's right to exercise his right to purchase the aircraft.

103.    Additionally, COUNTERCLAIMANT is informed, and believes, and thereon alleges that COUNTERCLAIM DEFENDANTS knowingly and intentionally authorized and incurred mechanical overtime expenses, in order to place the aircraft into legally airworthy condition for sale to COUNTERCLAIM DEFENDANTS' third-party buyer before COUNTERCLAIMANT could exercise his right to the option to purchase the aircraft and are seeking to compel the Counterclaimant to pay the extraordinary costs.

104.    Additionally, COUNTERCLAIMANT is informed, and believes, and thereon alleges that COUNTERCLAIM DEFENDANTS agreed to sell the aircraft to their third-party buyer at a greatly reduced cost, in a knowing, and deliberate effort to deprive COUNTERCLAIMANT of his business advantage, regarding the potential purchase of the aircraft pursuant to the terms of the lease.

105.    Thus, COUNTERCLAIMANT alleges that, in refusing to honor COUNTERCLAIMANT's right to exercise his option to purchase the aircraft, in violation of the lease agreement, COUNTERCLAIM DEFENDANTS have intentionally interfered with COUNTERCLAIMANT's business advantage, as originally negotiated pursuant to the terms of the lease.

106.    Therefore, COUNTERCLAIMANT prays for monetary relief, the amount of which is to be determined, according to proof, at the time of trial.

## THIRD CAUSE OF ACTION:
### FRAUD

107. COUNTERCLAIMANTS hereby incorporate by reference all previous paragraphs of this Counterclaim as though they were fully set forth herein.

108. The lease contained a clause requiring COUNTERCLAIMANT to undertake, at his expense, a technical diagnostic procedure (hereinafter, "hot section") pertaining to the aircraft.

109. Under the terms of the lease, the hot section was to be performed by a specific aircraft maintenance company (i.e., Keystone Aviation, located in Aurora, Oregon, and headquarted in the State of Utah; Keystone Aviation is a division of Truman & Arnold Companies, of the State of Texas).

110. The clause which required the performance of the hot section called for COUNTERCLAIMANT to be responsible for the cost of the hot section up to, but not to exceed, twenty-two thousand, five hundred dollars ($22,500.00).

111. The aforementioned clause additionally provided that, in the event that the cost of the hot section were to exceed thirty thousand dollars ($30,000.00), either party to the lease would be free to cancel the lease.

112. COUNTERCLAIMANT is informed, and believes, and thereon alleges that COUNTERCLAIM DEFENDANTS, in conjunction with Keystone Aviation, did seek to (and did succeed in), secure(ing) an artificially lowered actual cost for the undertaking of the hot section, such that COUNTERCLAIMANT was therefore legally obligated to honor the terms of the lease.

113. Through having been required to honor the lease, COUNTERCLAIMANT has been harmed, in that he: invested in the aircraft, paid the insurance on the aircraft, paid the operating costs for the aircraft, was responsible for maintenance to the aircraft in order keep

it in legally airworthy condition, and is now in the position of being forced to litigate in order to vindicate his rights.

## FOURTH CAUSE OF ACTION:

## BAD FAITH BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING

114.     COUNTERCLAIMANTS hereby incorporate by reference all previous paragraphs of this Counterclaim as though they were fully set forth herein.

115.     The duty of good faith and fair dealing is part of every contract unless it is expressly excluded and because it was not excluded by the parties in this instance, the Counterclaim Defendant owed the Counterclaimant the duty of good faith and fair dealing in the agreement which is the subject of this action. See *Northwest, Inc. v. Ginsberg*, -- U.S. ----, 134 S. Ct. 1422, 1431-32 (2014); *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014). It has even been codified in Oregon under real estate circumstances.

116.     The counterclaim defendant breached the duties of good faith and fair dealing in doing the acts alleged and incorporated herein, including conspiring to deprive and depriving the Counterclaimant of his option to cancel the Agreement (hot section deception incorporated herein); failure to pay taxes; failure to pay brokerage fees; listing the aircraft for sale in direct breach of the agreement; and the other conduct alleged in the answer, affirmative defenses and the counterclaim herein.

117.     That the breach is the actual and proximate cause of the harm to the Counterclaimant; depriving the counterclaimant of his right to cancel, which he would have cancelled had the true facts been given to the counterclaimant; cost the counterclaimant the lease payments; cost the

counterclaimant costs of repairs, maintenance, tie down, insurance and other expenses according to proof.

118. As an actual and proximate cause of the breach, the Counterclaimant is entitled to recover exemplary damages from the Counterclaim Defendants.

Whereby for the reasons alleged herein, the Counterclaimant suffered real, actual and consequential damages as set forth below and prays for relief sought.

## DAMAGES

119. By reason of the afore-described acts and omissions of COUNTERCLAIM DEFENDANTS, and each of them, COUNTERCLAIMANT has sustained economic losses potentially in excess of one hundred and twenty-five thousand dollars ($125,000.00).

120. By reason of the afore-described acts and omissions of COUNTERCLAIM DEFENDANTS, and each of them, COUNTERCLAIMANT has sustained harm in the form of having been deprived of his right to purchase the specific aircraft which forms the underlying basis for this controversy, thus requiring him to seek alternative options – potentially at greater expense than that which he would have incurred had COUNTERCLAIM DEFENDANTS not fraudulently drawn him into honoring the lease, and had they not refused, in violation of the terms of the lease, to honor his option to purchase the aircraft, thus exposing COUNTERCLAIMANT to an unfair disadvantage, where COUNTERCLAIMANT had instead bargained for, and had the right to receive, an affirmative advantage.

121. COUNTERCLAIMANT is additionally entitled to punitive damages, as the result of COUNTERCLAIM DEFENDANTS' bad faith breach of covenants of good faith and fair dealing, fraudulent acts, concealments, and omissions, as herein set forth.

## PRAYER FOR RELIEF

Wherefore, COUNTERCLAIMANT prays for the following relief:

1.      Damages for breach of contract, actual and compensatory damages, loss of business advantage, economic damages in an amount exceeding one hundred and twenty thousand dollars ($120,000.00), to be proven at trial;

2.      Punitive damages, in an amount to be determined at trial.

3.      Cost of litigation;

4.      Transportation expenses, maintenance expenses, rescission, restitution, actual and consequential damages;

5.      Attorney's fees incurred to date according to proof;

6.      Any other relief or damages allowed by law or statutes, not set forth above, and such further relief as the Court deems just and proper at conclusion of trial.

Respectfully Submitted:

MICHAEL J. KURGAN
6538 Collins Avenue
Unit 288
Miami Beach, FL 33141
Phone (858) 408-9330
Email: n461bb@gmail.com

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was served by means of US mail and email on:

MARKOWITZ, HERBOLD, GLAD & MEHLHAF, P.C.
Lisa A. Kaner
Suite 3000 Pacwest Center
1211 SW Fifth Avenue
Portland, Oregon 97204-3730
Tel: 503 295-3085
Fax: 503 323-9105
Email: LisaKaner@MHGM.com

Dated: September 12, 2014

Michael J. Kurgan