IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THE LANCE AND LINDA NEIBAUER
JOINT TRUST, by and through LANCE
NEIBAUER, as trustee,

        Plaintiff,

    v.

MICHAEL J. KURGAN, an individual,

        Defendant.
_____

Case No. 6:14-cv-01192-MC

ORDER

MCSHANE, Judge:

    Plaintiff Lance and Linda Neibauer Joint Trust leased a 2001 Piper Meridian (Aircraft) to defendant Michael Kurgan. The lease ran from September 20, 2013 until March 20, 2014. The lease gave Kurgan the option of buying the Aircraft provided that he notified the Trust of that intention at least 30 days before the end of the Lease. In December 2013, the parties entered into an addendum to the lease, extending it by an additional year if, but only if, Kurgan paid the Trust $96,000 by March 20, 2014. Kurgan did not pay the Trust any amount towards the $96,000.

    On April 3, 2014, Kurgan proposed returning the Aircraft to the Trust or renting the Aircraft by the hour. The Trust rejected the hourly rental proposal and Kurgan returned the

1 –ORDER

Aircraft on April 5, 2014, 16 days after the termination of the lease. On April 22, 2014, The Trust entered into an Aircraft Purchase Agreement (APA) for sale of the Aircraft to Enertron, Inc. On April 23, 2014, Kurgan attempted to exercise his purchase option. The Trust did not accept Kurgan's offer, as Kurgan's option expired over one month before and because the Trust had the signed APA with Enertron to purchase the Aircraft.

The Trust alleges that Kurgan intentionally interfered with the Trust's agreement to sell the Aircraft to Enertron and breached the original lease agreement. The Trust also asks the court for a declaratory judgment stating that on and after March 20, 2014, Kurgan has no right to purchase the Aircraft.

Kurgan alleges that the Trust breached the lease agreement first. Kurgan also brings counterclaims against the Trust alleging tortious interference, fraud, breach of contract, and breach of implied covenant of good faith and fair dealing.

Because Kurgan clearly breached the lease and then improperly interfered with the Trust's sale of the aircraft with a third party, the Trust's motion for summary judgment is GRANTED. As Kurgan's claims and counterclaims have no basis in fact, law, or equity, Kurgan's motions are DENIED.

## STANDARD OF REVIEW

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id*. The court reviews evidence and draws inferences in the light most favorable to the non-moving party.

*Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

### I. Breach of Contract

The original Lease signed by Kurgan and the Trust provided for a six month lease term, commencing when Kurgan took possession of the Aircraft following the completion of the hot goods section. Lease, ¶ 1. On September 20, 2013, Kurgan took possession of the Aircraft following completion of the hot goods section. Therefore, the lease term ended on March 20, 2014, six months after September 20, 2013. The lease provided Kurgan the option of purchasing the Aircraft "At any time during the lease term[.]" Lease, ¶ 6. The lease contained the following section titled "END OF LEASE TERM:"

> More than 30 days prior to the end of the Lease Term, the Lessee must notify the Owner of his Intentions. At this time, there are two options:
>
> a. Purchase the Aircraft. With terms as set out in Paragraph 6.
>
> b. Terminate the Lease. If Lessee decides to terminate the lease, he shall return the Aircraft to Keystone Aviation in Aurora, OR, and engage the Facility in an Annual Inspection. All Airworthiness squawks found during this inspection shall be the responsibility of the Lessee.

Lease, ¶ 7.

On December 12, 2013, Kurgan and the Trust signed an addendum providing Kurgan the option of extending the lease for another year, on the condition that Kurgan pay the Trust $96,000 "no later than March 20, 2014."

The lease and the addendum are crystal clear. No later than March 20, 2014, Kurgan had to: (1) purchase the Aircraft under the terms of the original lease; (2) return the Aircraft to Oregon for an annual inspection (and pay for all airworthiness squawks); or (3) extend the lease one year by paying the trust $96,000, kicking in the addendum. Kurgan did none of those things. Additionally, it is undisputed that Kurgan did not notify the trust of his intention to exercise his purchase option on or before March 20, 2014.

Instead of performing his obligations under the lease, Kurgan simply kept the Aircraft. Kurgan attempts to point to the addendum, arguing that under its terms he could not exercise his option to purchase the Aircraft before March 20, 2014. This argument blindly ignores the fact that under the unambiguous terms of the addendum, the addendum became null and void when Kurgan did not pay the trust $96,000 by March 20, 2014. Addendum, ¶ 1.

By not returning the Aircraft until April 5, 2014, Kurgan breached the contract. The trust seeks a prorated amount of $4,000 (half the monthly lease amount of $8,000) for the two weeks Kurgan kept the Aircraft after the end of the lease term. Kurgan also breached by not paying for the Airworthiness squawks found during the Annual Inspection. The Trust paid for the squawks, a total of $9,879.39. Finally, the trust seeks $17 for a landing fee it paid while Kurgan controlled the Aircraft after the end of the lease term. The Trust is entitled to all of these damages and is therefore awarded $13,896.39 in damages, prejudgment and postjudgment interest, and costs on its breach of contract claim.

The Trust also seeks a declaratory judgment that as of March 20, 2014, Kurgan had and has no right or option to purchase the Aircraft. The Court has the authority to issue such a declaration under 28 U.S.C. §2201(a). As discussed above, it is clear that Kurgan's option to purchase the Aircraft expired, at the very latest, on March 20, 2014. It is undisputed that Kurgan

4 –ORDER

made no offer to purchase the Aircraft before that date. Therefore, the trust's motion for a declaratory judgment that as of March 21, 2014, Kurgan had and has no option to purchase the Aircraft is GRANTED.

Kurgan's counterclaims deserve limited discussion here. Although Kurgan spills much ink advancing his theories, his counterclaims have no basis in law or equity. In fact, as discussed below, all of the equities here lay with the trust as Kurgan, even before any litigation, simply threatened the trust and innocent third parties with frivolous arguments intended solely to harass, intimidate, confuse, and drive up the attorney's fees for his opponents.

For example, Kurgan argues that the trust breached the lease first, by failing to provide an airworthy Aircraft. In support of this argument, Kurgan points to a receipt for $780.06 dated September 24, 2013. Kurgan appears to argue the Trust breached the lease, as an airworthy aircraft would not require minor repairs shortly after delivery.[1] Kurgan, however, never argued prior to litigation that the Trust breached the lease in any manner. Kurgan's attempt at rescission comes much too late, as Kurgan simply kept the benefit of the lease for many months, and even signed an addendum to the lease after learning of the Trust's alleged breach. *See DCCI, LLC v. Keith*, 2014 WL 1269696 at * 4 n.3 (D. Or. 2014) (party waives right to rescind by delaying demanding rescission while maintaining possession of benefit received)(citing *Davenport v. Vlach*, 81 Or. App. 553, 556 (1986)).

Kurgan's fraud-based rescission argument suffers the same fate. With no support, Kurgan baldly asserts the Trust committed fraud by colluding with a mechanic to keep the hot goods section repair under $30,000. Had the repair exceeded $30,000, either party could have

---

[1] $464.64 of the $780.06 appears to be for fuel, as opposed to any issue related to the aircraft's airworthiness.

5 –ORDER

terminated the lease. Kurgan, however, saw all of the receipts back in September 2013. His attempt to rescind the lease comes, once again, much too late. *Id*.

Kurgan also argues the Trust breached the lease by engaging a third party buyer prior to the termination of the lease. The only support for this claim is the APA between the Trust and Enertron. That document states that Enertron and the Trust made and entered into a purchase agreement on February 10, 2014. Kurgan Ex. in Supp. of Def.'s Mot. for Summ. J. or Partial Summ. J. 21. However, the parties signed the APA in April of 2014. *Id*. Neibauer submitted a declaration, supported by emails to the broker and Enertron, demonstrating that the Trust did not attempt to sell the Aircraft until after Kurgan returned it. Second Neibauer Decl., ¶ 19; Ex. 1-4. Neibauer provided a declaration stating the February 10, 2014 effective date is simply a typographical error. *Id*. at ¶ 24. A scrivener's error in the APA, especially in light of the declaration and exhibits demonstrating that the Trust did not attempt to sell the Aircraft before the end of the lease term, does not create a genuine issue of material fact that the Trust breached the lease.

Additionally, even if the Trust had in fact breached by engaging Enertron in February of 2014, Kurgan did not suffer any damages. "Damage is an essential element of any breach of contract action." *Moini v. Hewes*, 93 Or. App. 598, 602-03 (1988). Kurgan never attempted to exercise the option to purchase the airplane prior to the termination of the Lease Agreement. Additionally, Kurgan only learned of the scrivener's error during discovery, long after his option expired. Therefore, even assuming the Trust breached the lease, which it did not, Kurgan did not suffer any damages.

## II.   Intentional Interference with Contract

In Oregon, a claim for intentional interference with contract requires that:

6 – ORDER

> 1) The plaintiff had a contract or a reasonable expectancy of economic advantage; 2) the defendant knew of the contract or expectancy; 3) the defendant intentionally interfered with the contract or expectancy; 4) the defendant's means or motive were improper or wrongful by some measure beyond the fact of the interference itself; and 5) the plaintiff was damaged as a result.

*Leaco Enterprises, Inc. v. Gen. Elec. Co.*, 737 F. Supp. 605, 609 (D. Or. 1990). In this case, the Trust proves each element. The Trust had a contract to sell the Aircraft to Enertron and Kurgan was aware of this contract. *See generally* Neibauer Decl. Ex. 10(APA) and Neibauer Decl., Exs. 13, 14. Kurgan intentionally interfered with the contract by clouding the title of the lease via the FAA (Neibauer Decl., Ex. 12), informing the Trust and Enertron of his intent to file legal claims (Neibauer Decl., Ex. 13, 14), and filing a lawsuit in California against the Trust (Fox Decl., Ex. 1). The only real question is whether Kurgan's interference was done through improper means and caused damages.

### IIa.   Improper Means

Improper means "must violate some objective, identifiable standard, such as a statute or other regulation, or a recognized rule of common law, or, perhaps, an established standard of a trade or profession." *Nw. Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or. 487, 498 (1999). The Trust argues that Kurgan's actions were improper in two ways: (1) by filing an unfounded lawsuit against the Trust in California, and (2) by using threats and intimidation to disrupt the Trust's sale to Enertron.

Improper means include "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood. " *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 210 n. 11 (1978). Fraud allegations may also satisfy the element of improper means. *Thompson v. Tel. & Data Sys., Inc.*, 130 Or. App. 302, 313, 881 P.2d 819, 826 *opinion adhered to as modified on reconsideration*, 132 Or. App.

103, 888 P.2d 16 (1994). It is not necessary to prove all elements of another tort in making out an interference claim. *Top Serv. Body Shop, Inc.*, 283 Or. at 210 n. 11.

In this case, Kurgan emailed the broker threatening that "a buyer might be subject to a torturous (sic) interference claim if they are trying to induce the owner by paying more than my contract price." Neibauer Decl. Ex. 13. Kurgan also directly contacted Enertron's agent stating he had a right to the Aircraft, which he did not. Neibauer Decl. Ex. 14. Kurgan even went so far as to file the expired lease with the FAA, clouding the Aircraft's title and slowing down the sale. Neibauer Decl. Ex. 12. All of this occurred *after* Kurgan's lease expired, *after* Kurgan returned the plane, and *after* Kurgan cancelled his insurance on the plane. In other words, Kurgan had no right to the Aircraft and no contract with the Trust. His actions only served to delay the sale of the Aircraft and cause the Trust and Enertron to incur legal fees and renegotiate a lower Aircraft price. Further, Kurgan's arguments regarding his option to purchase the aircraft are (and were) frivolous. As noted, the terms of the lease are clear. Kurgan performed none of the steps required to execute either his option or the addendum. Instead, Kurgan simply kept the aircraft for an additional two weeks before returning it and then refused to pay for the squawks.

Kurgan's actions caused considerable damages to the Trust. Not only did they incur legal fees, but they also were forced to lower the price in order to compensate for Enertron's legal expenditures. Before Kurgan interjected himself into the Trust's contract with Enertron to sell the aircraft, the Trust had a signed APA in which Enertron agreed to purchase the Aircraft for $825,000. After Kurgan threatened the Trust and Enertron with a frivolous lawsuit, the Trust had to lower the price to $805,000. Kurgan is liable for those damages.[2]

---

[2] Kurgan argues the amount of the Trust's damages is a question for the jury. This appears to be one more attempt by Kurgan simply to drive up the attorney's fees for the Trust. The fact remains that before Kurgan interfered in

8 –ORDER

The Trust is also awarded fees incurred defending Kurgan's frivolous California lawsuit. The Trust incurred $26,422.16 in costs and fees defending Kurgan's California action. Fox Decl., ¶ 7, Ex. 5. The Trust incurred these costs and fees as a direct result of Kurgan's intentional interference with the Enertron contract.[3]

Finally, the Trust is entitled to recover $308.20 in insurance it had to purchase due to Kurgan's interference. The APA called for the Trust to maintain insurance on the aircraft until the closing date of May 30, 2014. Due to Kurgan's interference, the sale did not close until June 9, 2014. $308.20 is the cost of insurance from June 1 through June 9, 2014.

## CONCLUSION

The Trust's motion for summary judgment, ECF No. 22, is GRANTED. Kurgan's motion for summary judgment, ECF No. 23, is DENIED. The Trust is awarded $13,896.39 on its breach of contract claim and $46,730.36 on its intentional interference with contract claim. The Trust is also entitled to costs and prejudgment and post-judgment interest.

IT IS SO ORDERED.

DATED this 16th day of December, 2014.

                                                      _____/s/ Michael J. McShane__
                                                             Michael McShane
                                                     United States District Judge

---

the sale, the Trust had a signed APA with Enertron for $825,000. After Kurgan's interference, the Trust had to reduce the price by $20,000 and indemnify Enertron. ECF No. 28, ¶ 24.

[3] I note the Trust does not seek to recover over $40,000 in fees incurred in this action. The Trust also does not seek punitive damages at this time.