IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| THE LANCE AND LINDA NEIBAUER JOINT TRUST, an Oregon Trust, by and Through LANCE NEIBAUER, as trustee,<br>   Plaintiff,<br><br>v.<br><br>MICHAEL J. KURGAN, an individual,<br>   Defendant, | ) Case No. 6:14-cv-01192-MC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT MICHAEL J. KURGAN'S ("KURGAN") OPPOSITION TO PLAINTIFF'S MOTION FOR CONTEMPT, KURGAN'S REQUEST FOR IMMUNITY AND TO SEAL THE RECORDS**

### RULE 7-1 COMPLIANCE

The Defendant hereby certifies that he has made a good faith effort to confer with Plaintiff to resolve the subject of this motion, but was unable to resolve the dispute.

### LR 7-2 and 26-3(b) CERTIFICATION

This brief complies with the applicable word count and page count limitations under LR7-2(b) and 26-3(b) because the Memorandum contains 3129 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

### INTRODUCTION

1

The Plaintiff's action in attempting to recover satisfaction of their judgment has pressed the boundaries of simply attempting to collect a debt, into coercion of payment by means of seeking Kurgan's incarceration; threats of further monetary sanctions which Kurgan cannot afford; threats and acts seeking criminal prosecution and civil liability for corporate and personal fraud; threats against his spouse and attachments of her bank accounts; and even threats of fraud against his legal counsel and his employees. Other governmental entities have contacted Kurgan arising from the Plaintiffs collection efforts.

The Plaintiff has already accused the Defendant of perjury for Kurgans responses to the discovery and seeks to compel further testimony or hold Kurgan in criminal contempt. Plaintiffs or plaintiff's agents, or others working with the plaintiff then approached the California Franchise Tax Board, reporting Kurgan, which resulted in Kurgan being contacted by a revenue officer for the State of California regarding his personal taxes and that of Service Wing. This Court has even stated that Kurgan was already found in contempt and this Court said it would entertain criminal contempt charges. Kurgan also discovered that Plaintiffs are working directly with Rich Pickett, a disgruntled investor in Service Wing. Mr. Picket is a former detective in the State of Colorado and on information and belief, Kurgan is informed that he is or has been a consultant for the FBI. Mr. Picket or others with whom he is working has contacted both state and Federal Authorities and is accusing Kurgan of crimes of fraud. In fact, when Kurgan appeared for his deposition, he was served with a lawsuit filed by Pickett and others alleging Kurgan committed fraud,

and that case was dismissed without prejudice because on information and belief, Kurgan believes that Mr. Pickett and others are currently working with the authorities on the fraud allegations. The post judgment pleadings that Plaintiff has filed including attempts at attaching exempt (tenancy by the entirety accounts) with Kurgan's wife; attempts to separate Kurgan from his Florida Counsel who tried to file for protective orders on behalf of Kurgans spouse, and even attacked counsel's paralegal, accusing Kurgan of perpetrating a fraud on the court. All these serious matters have led Kurgan to assert his Fifth Amendment privilege from incriminating himself from these very real threats.

Kurgan appeared at his deposition and did not blanket object to every question, and only objected to sixty seven questions asked. All of the objections were made on the advice of Kurgan's counsel, John Bergenfahai, who was present with him at the time of his deposition. None of the objections Kurgan made were out of concern about his future testimony as alleged, but in fact, the privilege was asserted because claims of perjury, fraud criminal investigations, fraud investigation by Mr. Pickett, a former detective and an FBI consultant, orders of contempt that have already been made and this court's order stating it will consider criminal contempt of court. The privilege was asserted for what has already transpired not based whether future testimony might be false or true.

## FACTUAL BACKGROUND

1. As noted in the December order on page 9 the plaintiff has accused Kurgan of perjury and cited the crime fraud exception. The Court quoting from plaintiff's filings said:

    a. **"Defendant's perjury here is clear"**. Defendant testified under oath that he does not currently draw a salary, that he has not received funds from any source for the past two years, that he does not receive compensation from any of his companies, and that he has not filed tax returns for the past four years. (See Exhibits I and J) Of course, evidence produced by a disinterested witness in response to a subpoena tells a different story. Documents produced by First Florida Credit Union show that Defendant has been drawing a bi-weekly salary of $10,416.67 (approximately $270,000 per year) from one of his companies, Service Wing Healthcare, Inc., and that he has been paying taxes on that income. (See Exhibit K.) Thus, Defendant's testimony-which was presumably provided for the purpose of evading the judgment against him-is demonstrably false. At the very least, the evidence supports a good faith belief by a reasonable person that an in camera..."

2. On page 10 of the same order, the court also stated it would **entertain criminal contempt charges**.

3. On or about December 19, 2017 Kurgan learned that the plaintiff was working with Rich Pickett. Mr. Pickett is a disgruntled investor in Service Wing Healthcare. Mr. Pickett has told Mr. Kurgan that he is a former detective in

4

the state of Colorado and is a consultant to the FBI. On information and belief Kurgan feels Mr. Pickett or others he is working with has contacted both state and federal authorities accusing him of fraudulent crimes. This is in the court records as an exhibit to the motion for attorney's fees. See Exhibit 2, plaintiff's motions for attorney's fees filed December 19, 2017.

4. The department of revenue for the state of California has contacted Kurgan and Kurgan has declined to answer the questions.

5. On March 23rd, 2018, when Kurgan appeared to have his deposition taken he was served with a lawsuit from Mr. Pickett and others alleging fraud.

6. On May 30th, 2018, Kurgan was dismiss without prejudice from that lawsuit with the belief that Mr. Pickett continues to work with state and federal authorities.

7. I believe I've properly asserted my constitutional Fifth Amendment rights and hired local counsel to advise me in regards to the matters that I believe could be currently under criminal investigation.

## ARGUMENT

**GIVEN THE REAL THREAT IN THESE PROCEEDINGS FOR CRIMINAL CONTEMPT AND PERJURY INADDITION THE THREAT OF CRIMINAL AND CIVIL PROSECUTION FOR FRAUD OUTSIDE OF THESE PROCEEDINGS, AND KURGAN'S CURRENT BELIEF THAT HE MAY BE UNDER INVESTIGATION BY FEDERAL AUTHORITIES AND THOSE OF**

## AT LEAST THE STATE OF CALIFORNIA, KURGAN IS ENTITLED TO ASSERT HIS FIFTH AMENDMENT PRIVILEGE.

When a person is questioned by the government, if a truthful answer might incriminate him in a future criminal proceeding, the Clause provides him with the *privilege* to refuse to answer. *Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973). Ordinarily, if the person does not assert the privilege at that time—if he simply answers the question—his answer is considered voluntary (that is, not "compelled") for purposes of the Fifth Amendment.[2] *Minnesota v. Murphy,* 465 U.S. 420, 429 (1984). The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." The Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. *McCarthy v. Arndstein,* 266 U. S. 34, 40 (1924), squarely held that "[t]he privilege is not ordinarily dependent upon the nature of the proceeding in which the testimony is sought or is to be used. It applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it. The privilege protects a mere witness as fully as it does one who is also a party defendant."

In this respect, *McCarthy v. Arndstein* reflected the settled view in this Court. The object of the Amendment "was to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to

6

show that he himself had committed a crime." *Counselman v. Hitchcock*, 142 U. S. 547, 562 (1892). See also *Bram v. United States*, 168 U. S. 532, 542-543 (1897); *Brown v. Walker*, 161 U. S. 591 (1896); *Boyd v. United States*, 116 U. S. 616, 634, 637-638 (1886); *United States v. Saline Bank*, 1 Pet. 100 (1828). This is the rule that is now applicable to the States. *Malloy v. Hogan*, 378 U. S. 1 (1964). "It must be considered irrelevant that the petitioner was a witness in a statutory inquiry and not a defendant in a criminal prosecution, for it has long been settled that the privilege protects witnesses in similar federal inquiries." 78*78 *Id.*, at 11.

The privilege against self-incrimination applies not only to criminal proceedings, but to civil proceedings as well where statements may later be used in a criminal proceeding against the speaker. *See Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) (privilege against self-incrimination "not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings."); *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 69 L.Ed. 158, (1924) (The privilege "applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it.").

A court must, however, be wary that inappropriate procedural remedies or unwarranted sanctions do not unduly burden a litigant's valid attempts to seek the protection that the privilege against self-incrimination provides, especially when

there is nothing to suggest that the Fifth Amendment was used abusively or to gain an unfair tactical advantage. *See United States v. 4003-4005 5th Ave.,* 55 F.3d 78, 85 (2d Cir.1995); *SEC v. Graystone Nash,* 25 F.3d 187, 192 (3d Cir.1994) ("Because the privilege is constitutionally based, the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side.").

Plainly, Kurgan has good reason to seek the protections of the Fifth Amendment, as a criminal investigation based on the very conduct alleged here is currently pending or likely to be pending by the Federal Government and the State of California. See *Priebe v. World Ventures, Inc.*, 407 F. Supp. 1244 - Dist. Court, CD California 1976

Kurgan contends that the allegations contained in the plaintiff's motions and discovery involving federal and state securities violations and allegations of actual fraud could also support an action for criminal liability. Given the facts, and that Rich Pickett's lawyer had Kurgan sued at a privately scheduled deposition clearly shows how closely the Plaintiffs are working with the other parties to other actions, including a consultant with the FBI. The there is a "reasonable basis" for believing that "incriminating evidence would be revealed" and that the privilege must be applied only to specific questions asked.

It is settled that the fifth amendment privilege against self-incrimination applies in civil proceedings. *McCarthy v. Arndstein,* 266 U.S. 34, 40, 45 S.Ct. 16, 69 L.Ed. 158 (1924). The test for determining the application of the privilege, however,

has been variously stated. The United States Supreme Court in *United States v. Kordel,* 397 U.S. 1, 9, 90 S.Ct. 763, 25 L.Ed.2d 1 (1969) stated the historic view that the privilege cannot be invoked without a demonstration of a "real and appreciable" risk of self-incrimination. *See, e.g., Minor v. United States,* 396 U.S. 87, 98, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969); *Leary v. United States,* 395 U.S. 6, 16, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). The question of what constitutes a "real and appreciable" risk has often confronted the courts, and the term has been interpreted in a fashion designed to fully protect individual rights. McCormick in his treatise on Evidence states that "the now prevailing general judicial attitude [is] that almost any conceivable danger is `real and appreciable.'" § 123, at 263 (2d ed. E. Cleary 1972). And Wright and Miller observe that, "In many of the cases in which the issue has arisen criminal charges involving the same occurrences are already pending against the party, but this is not the measure of the privilege, and it is available even if the risk of criminal prosecution is remote." 8 *Federal Practice and Procedure* § 2018, at 141 (1970). These renditions are entirely consistent with the test applied by the Supreme Court in *Hoffman v. United States,* 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1951) (emphasis in original), *quoting Temple v. Commonwealth,* 75 Va. 892, 898 (1881): "In this setting it was not *'perfectly clear,* from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency' to incriminate." *See, e.g., Guy v. Abdulla,* 58 F.R.D. 1, 2 (N.D.Ohio 1973), *de Antonio v. Solomon,* 42 F.R.D. 320, 323 (D.Mass. 1967). **Clearly in this setting, where the civil charges dovetail with those which could give rise to criminal**

9

sanctions, the risk of criminal prosecution cannot be characterized as "imaginary and insubstantial," (*Minor v. United States, supra,* 396 U.S. at 98, 90 S.Ct. 284) without a possibility of a "tendency" to incriminate (*Hoffman v. United States, supra,* 341 U.S. at 488, 71 S.Ct. 814), "trifling" (*Marchetti v. United States,* 390 U.S. 39, 53, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968)), or "purely fantastic" (*de Antonio v. Solomon, supra,* 42 F.R.D. at 323).

While Defendants recognize that under normal circumstances he cannot simply make a blanket refusal to answer questions, he answered what he could already, and made a particularized objection to each of the questions he was asked that he knew he could not answer or that his counsel who appeared with him believed could incriminate him. See *Capitol Products Corporation v. Hernon,* 457 F.2d 541 (8th Cir. 1972). There a plaintiff judgment creditor asked questions designed to reveal the assets of the defendant in an effort to assist in the execution of the judgment. The defendant, apparently concerned about the criminal tax consequences of full disclosure, refused to answer any questions, citing the privilege against self-incrimination. The Eighth Circuit held that the defendant could be required to specifically justify the claim of privilege with respect to each question. In *Hernon* it was clear that a blanket claim of privilege was inappropriate. It defied credulity to suppose that any and every question about the assets of the defendant created a risk of self-incrimination. In the absence of some more definite showing, the court properly held that the privilege was not properly invoked.

But this case is radically different. Here any questions that could lead to discoverable evidence admissible in the civil proceeding could also provide "a link in the chain of evidence" needed in a criminal prosecution. *Blau v. United States,* 340 U.S. 159, 161, 71 S.Ct. 223, 224, 95 L.Ed. 170 (1950); *Malloy v. Hogan,* 378 U.S. 1, 11-12, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Here, unlike *Hernon,* any proper question in the civil context inherently gives rise to self-incrimination hazards.

This, of course, does not mean that the plaintiffs are precluded from further discovery." *United States v. 3963 Bottles . . . of . . . "Enerjol Double Strength,"* 265 F.2d 332, 336 (7th Cir. 1959). The Plaintiff has readily availed themselves of discovery propounded on third parties and other companies. They have ample information that all of Kurgans assets, if any there are, are held as Tenants by the Entirety.

It is clear, however, at this point, that the privilege here has been properly invoked by Kurgan. *See Gellis v. Casey,* 338 F.Supp. 651 (S.D. N.Y.1972); J. Wigmore, 8 *Evidence* § 2257, at 339 (Rev. ed. McNaughton 1961).

### POINT THREE

### RELIEF SOUGHT – IMMUNITY, GAG ORDER, AND SEALING THE RECORDS, SHOULD BE GRANTED IF THE COURT IS INCLINED TO COMPEL KURGAN TO ANSWER

Because Kurgan has no significant assets that are not held as tenants by the entirety, and Kurgan wishes to avoid taking bankruptcy; Kurgan is willing to negotiate a potential resolution to this matter. If the court will grant immunity to

11

Kurgan for his responses; seal the record; seal the deposition; and order counsel and plaintiff not to share any information they obtain in their discovery with any other person, entity, government or agency, then Kurgan would be willing to respond to the questions under a single blanket objection and without waiving that objection, fully respond to any question with the information he possesses.

"A witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant." *Kastigar v. United States*, 406 U. S. 441 (1972). Absent such protection, if he is nevertheless compelled to answer, his answers are inadmissible against him in a later criminal prosecution. *Bram v. United States, supra; Boyd v. United States, supra*.

Lastly, and most importantly, is that Kurgan is willing to answer the questions fully if the court is willing to grant limited immunity. None of the questions answered in the deposition could be used for criminal prosecution at any time. Furthermore the deposition should be sealed to protect the immunity. The court should note that Plaintiff has already made several attempts to attach jointly held accounts. While the funds in those accounts have not been removed, there were substantial bank fees incurred by Kurgan and his wife for each wrongful attempt. Kurgan is fearful, aside from being held in contempt, that any information provided will result in more attacks on his wife and her funds, causing them to appear in the Southern District of Florida (multiple venues) for a protective order. We all know that the last time that

happened, David Harris was accused of fraud so he withdrew his pleadings to avoid even an appearance of impropriety and will make it much more difficult the next time a motion is necessary to find an attorney willing to represent Kurgan and his innocent spouse.

## CONCLUSION

I have absolutely NO INTENTION WHATSOEVER of disrespecting the orders of this Court. I apologize profusely if any of my actions appeared disingenuous to this court. I am sincerely sorry for any inconvenience my assertion of my privilege may cause but I am very concerned for my own safety and that of my rights.

Respectfully Submitted:

*Michael Kurgan*
**Michael J. KURGAN**
6538 Collins Avenue
Unit 288
Miami Beach, FL 33141
Phone (858) 480-9330
E-Mail n461bb@gmail.com
Defendant Pro Se

Cc: A true and correct copy of the foregoing was provided on the date set forth above to: **Nicholas J. Henderson, OSB No. 074027**
Email: nhenderson@portlaw.com
Motschenbacher & Blattner, LLP
117 SW Taylor Street, Suite 200
Portland, Oregon 97204-3029
Telephone: (503) 417-0508
Facsimile: (503) 417-0501

By means of email and us postage, first class, postage pre-paid.

13